**BILLINGSLEY PARTS AND EQUIPMENT, INC.,**
**Appellant,**

v.

**Jean VOSE, Appellee.**

**No. 01–93–00527–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 1994.

E.M. Schulze, Jr., Huntsville, for appellant.

Joe B. Henderson, Jr., Thomas A. Leeper, Huntsville, for appellee.

Before DUGGAN, HEDGES and O'CONNOR, JJ.

## OPINION ON MOTION
## FOR REHEARING

O'CONNOR, Justice.

On Vose's motion for rehearing we withdraw our original opinion and substitute this in its stead. We deny the motion for rehearing.

This is an appeal from an order dismissing a suit for lack of jurisdiction. The issue is whether a Texas court has jurisdiction over a sales agent in Illinois who was the representative for a Texas company. The trial court found the representative's contacts were too minimal to allow the exercise of in personam jurisdiction. We disagree and reverse.

### Fact summary

Billingsley Parts and Equipment, Inc. (Billingsley), the plaintiff, a Texas corporation with its principal office in Huntsville, sold video-audio monitors for security systems on school buses. In March 1991, Jean Vose, the defendant, placed a telephone call from Illinois to Billingsley in Huntsville. Vose, who at that time worked for the Illinois Department of Transportation and was developing a curriculum for bus driver training classes, inquired about Billingsley's video-audio monitors. Vose was interested in developing a project to maintain discipline on school buses. Billingsley mailed information to Vose. Vose called Billingsley for additional information and talked to Gordon Wells, the national sales manager. Wells testified he went to Springfield, Illinois, to meet Vose and show her their product. At that meeting, Wells said they discussed Vose taking a position as the Illinois sales representative for Billingsley. Later, Vose telephoned Wells in Huntsville for information on Billingsley's policy regarding sales representatives and said she would like to work as an Illinois representative for Billingsley. Wells mailed Vose an employment contract to her home in Springfield, Illinois. Vose signed it and mailed it back to Wells in Huntsville. Billingsley's president, Lynn Billingsley Hooks, signed the contract in Walker County.

During Vose's one-year tenure with Billingsley, she placed orders by mail and by telephone calls to the company's Huntsville office. Billingsley shipped the merchandise directly to the customer. In a deposition, Vose said the number of calls she made to Billingsley to place orders varied—sometimes she made several phone calls a week, sometimes none. Wells testified Vose had the authority to bind Billingsley on a sale, but could not alter the payment terms. Wells testified Vose never came to Texas or made any sales in Texas. Vose was paid commissions by checks drawn on a Texas bank.

The pertinent parts of the employment contract between Vose and Billingsley are:

### Article 10

The salesman is an independent contractor and is in no sense a legal employee, servant or partner of the corporation. No acts or assistance given by the corporation to the salesman shall be construed to alter this relationship.

### Article 12

12.03 This agreement shall be construed and enforced in accordance with the laws of the State of Texas and all obligations of the parties created hereunder are performable in Walker County, Texas.

The employment contract prohibited Vose from soliciting any of Billingsley's customers for two years after leaving Billingsley. Vose

resigned in January 1992, and started her own business, Safety Consultants Marketing, to sell video monitor systems for school buses. Billingsley sued Vose in Texas.

In point of error one, Billingsley contends the district court erred in sustaining Vose's objection to jurisdiction and in dismissing the suit. Billingsley argues Vose purposely sought to profit from a transaction consummated in Texas, and by virtue of the contract, she had a substantial economic relationship with Texas. Billingsley contends Vose had fair warning that she might be subject to suit in Texas because she initiated the contact with the Texas company.

### In Personam Jurisdiction

■ A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990); *General Elec. Co. v. Brown & Ross Int'l Distrib., Inc.,* 804 S.W.2d 527, 530 (Tex.App.—Houston [1st Dist.] 1990, writ denied); TEX.CIV. PRAC. & REM.CODE §§ 17.041–17.042 (Vernon 1986).

### I.

### The Texas Long–Arm Statute

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident "doing business" in Texas. TEX.CIV. PRAC. & REM.CODE § 17.042; *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The broad language of the long-arm statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal,* 815 S.W.2d at 226; *Schlobohm,* 784 S.W.2d at 357.

Section 17.042 of the Civil Practice & Remedies Code states in part:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state. . . .

Because Vose signed a contract with a Texas corporation and sent it through the mail to be executed in Texas, section 17.042(1) authorized service on her. *Schlobohm,* 784 S.W.2d at 357.

We now consider whether the exercise of jurisdiction under the long-arm statue is consisted with due process.

### II.

### Constitutional Due Process

■ Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant such as Vose. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 226. The United States Supreme Court divides the due process requirement into two parts: whether the nonresident defendant purposefully established "minimum contacts" with Texas, and, if so, whether the exercise of jurisdiction by a Texas court comports with "fair play and substantial justice." *Guardian Royal,* 815 S.W.2d at 226. Thus, to determine whether a Texas court can assert jurisdiction over Vose, we ask two questions: (1) Did Vose have minimum contacts with Texas? and (2) Does the exercise of jurisdiction by a Texas court offend traditional notions of fair play?

■ At the hearing on the special appearance, Vose had the burden to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Siskind v. Villa Foundation for Ed., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); Thode, *In Personam Jurisdiction,* 42 Tex. L.Rev. 279, 322 (1964).

■ On motion for rehearing, Vose argues that we omitted the appellate standard of review as stated in *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987). In *Zac Smith,* the Supreme Court said that when no findings of fact are included in the appeal of a special appearance, all questions

of fact are presumed found in support of the judgment. *Id.* When, however, the record includes a statement of facts, even unchallenged findings are not conclusive. *Id.* In this case, the special appearance was submitted to the court upon the live testimony of Gordon Wells (Billingsley's national sales manager), the depositions of Wells and Vose, and Billingsley's answers to request for admissions. Few of the facts here are subject to dispute; the dispute centers around the legal effect of the facts.

### A. Minimum contacts

■ Under the minimum contacts analysis, we must determine whether Vose purposefully availed herself of the privilege of conducting business in Texas and thus invoked the benefits and protection of its laws. *Guardian Royal,* 815 S.W.2d at 226. The "purposeful availment" requirement ensures that a nonresident defendant will not be hailed into a jurisdiction based on random, fortuitous, or attenuated contacts, or the unilateral activity of another party. *Id.* Furthermore, persons must have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Id.*

■ The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the forum state. *Guardian Royal,* 815 S.W.2d at 226. The substantial connection between the nonresident defendant and the forum state must come about by the actions or conduct of the nonresident defendant. *Id.* The constitutional touchstone is whether the nonresident defendant purposefully established "minimum contacts" in the forum. *Id.* at 226–27.

■ Following the lead of the United States Supreme Court, the Texas Supreme Court has refined the "minimum contacts" analysis into specific and general jurisdiction.

When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with Texas to satisfy the minimum contacts requirement. *Guardian Royal,* 815 S.W.2d at 227. When general jurisdiction is asserted, it is not necessary for the cause of action to arise out of or relate to the nonresident defendant's contact with Texas; in such case, the minimum contacts analysis requires a showing of substantial activities in Texas. *Id.* at 228.

■ Applying the minimum contacts analysis here, Texas does not have general jurisdiction over Vose because Vose did not have systematic and continuous contacts with Texas. Vose's only contacts with Texas were those related to the contract under litigation. If Texas has jurisdiction over Vose, it is under the concept of specific jurisdiction, because this cause of action arises from Vose's contract of employment with Billingsley.

■ Billingsley contends Texas has personal jurisdiction over Vose because: (1) Vose sought work with a *Texas corporation;* (2) under the contract, Vose agreed to perform all obligations (other than sales) *in Texas,* and contracted to pay damages for breach of contract *in Texas;* (3) Vose agreed that the employment contract was governed by the *laws of Texas;* and (4) Vose agreed that the obligations of the parties were performable *in Texas.* Vose argues she did not conduct business in Texas because her contract precluded her from seeking buyers of Billingsley systems from outside Illinois, and she did not send money to Texas.

We hold that Vose's contacts were sufficient to give Texas courts specific jurisdiction over her. Vose made the initial contact with the Texas company[1]; she inquired if the Texas company was interested in an Illinois representative; she signed and mailed her contract with the Texas company to Texas to be executed here[2]; the contract provided

---

**1.** On motion for rehearing, Vose contends she did not initiate the contact with Billingsley; that Billingsley contacted her. Contrary to her argument, Vose testified on deposition that a friend of hers who had seen Billingsley's products told her about Billingsley. She then telephoned Billingsley and inquired about its products.

**2.** On motion for rehearing, Vose contends the record does not establish, as a matter of law, that the contract was executed in Texas. Contrary to her assertion, the record shows she signed the contract in Illinois and mailed it back to Texas where it was signed by an officer of Billingsley.

that it was to be governed by Texas law and was performable in Texas; she sent orders to Texas; and she received and cashed checks drawn on a Texas bank for her commissions.[3]

For other cases in which the courts have found specific jurisdiction, see *Zac Smith & Co.*, 734 S.W.2d at 665 (Florida joint venture signed contract to build hotel in Texas, which was never built; contract was mailed to Louisiana, not Texas); *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650–51 (Tex.App.—Houston [14th Dist.] 1992, no writ) (defendant insurance company, in response to one telephone call from hospital asking if a certain person was covered, gave false information on which hospital relied); *Bissbort v. Wright Printing & Pub. Co.*, 801 S.W.2d 588, 589 (Tex.App.—Fort Worth 1990, no writ) (defendant initiated negotiations over telephone with Texas resident; the proposal and acceptance of the contract were sent through the mail and defendant wired the money to plaintiff's account in Texas); *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 771 (Tex.App.—Corpus Christi 1985, no writ) (contract between two nonresidents to perform a contract in Texas, contract provided that law of Texas governed all disputes, one of parties to contract assigned interest to a Texas bank, who sued the other party); *Fidelity Union Life Ins. Co. v. Orr*, 648 S.W.2d 36, 38 (Tex.App.—Dallas 1983, no writ) (Illinois agent of Texas company who was integral part of the Texas company was required to devote his full working time to the company's business; attended a six-day training school in Dallas).

Vose refers us to *3–D Electric Co., Inc. v. Barnett Construction Co.*, 706 S.W.2d 135, 137 (Tex.App.—Dallas 1986, writ ref'd). In *3–D Electric*, the Dallas Court of Appeals held that Texas had no jurisdiction over a Tennessee defendant who, as the general contractor to build a motel in Colorado, made an oral contract with a Texas corporation for the electrical work. The court held the defendant's contacts with Texas—an oral contract with a Texas corporation, payments to the Texas corporation, telephone calls, and correspondence—were not enough to establish minimum contacts. *3–D Electric*, 706 S.W.2d at 142–43. Here, as provided by section 17.042, we have a written contract sent by mail; a contract provision that provides for the application of Texas law; solicitation made by the nonresident to Texas; and numerous contacts by the nonresident with the Texas corporation by mail, including sending orders and receiving payment.

### B. Fair play

■ The last question is whether the exercise of jurisdiction over Vose by a Texas court offends the traditional notions of fair play and substantial justice. In analyzing fair play and substantial justice, the Texas Supreme Court said the courts should consider: (1) the burden on the defendant; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interests of Texas in adjudicating the dispute; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal*, 815 S.W.2d at 228.

■ We hold that the traditional notions of fair play and substantial justice are not offended by the exercise of jurisdiction over Vose for the following reasons: (1) the burden on the defendant to defend the case in Texas is the same as the burden on the plaintiff to try the case in Vose's home state; (2) nothing in the record shows Vose would be excessively burdened and inconvenienced by litigation in a Texas court; and (3) Texas has an interest in adjudicating the dispute because the contract was executed here and the laws of Texas will apply to its interpretation. Factors (4), the interstate judicial system's interest in obtaining the most effective resolution of the controversy, and (5), the

---

**3.** On motion for rehearing, Vose contends that we should not consider that Vose received checks sent from Texas; that her receipt of a check was a unilateral act of the plaintiff, not a purposeful act of the defendant, as required by *Guardian Royal*, 815 S.W.2d at 227. We disagree. The receipt of checks drawn on a Texas bank was part of the performance of contract; section 12.03 of the contract stated that "all obligations of the parties created hereunder are performable in Walker County, Texas."

shared interest of the several states in furthering fundamental substantive social policies, apply equally to either forum.

We sustain point of error one and reverse.