**Affirm in part; Reverse and Render in part; and Remand; Opinion Filed July 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01584-CV

### ADAM C. LEONARD, Appellant
### V.
### SALINAS CONCRETE, LP, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-04971**

## OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

This interlocutory appeal was filed by Adam C. Leonard following the trial court's denial

of his special appearance in a lawsuit filed against him by his former employer, Salinas

Concrete, LP ("Salinas"). Specifically, Salinas asserted claims against Leonard for breach of

fiduciary duties during and after his employment, breach of written and oral contracts, quantum

meruit, and tortious interference with an existing business relationship.

In his sole issue on appeal, Leonard contends the trial court erred by concluding he had

sufficient minimum contacts with the State of Texas to warrant the exercise of personal

jurisdiction over him. We conclude the trial court has personal jurisdiction over Leonard as to

Salinas's claim for breach of a written contract, but lacks personal jurisdiction over Leonard as to

Salinas's other claims. We (1) affirm the trial court's order as to Salinas's claim for breach of a

written contract; (2) reverse the trial court's order as to Salinas's other claims and render judgment granting Leonard's plea to the jurisdiction as to those claims and dismissing them for want of jurisdiction; and (3) remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute that Salinas is a Texas limited partnership headquartered in Plano, Texas, and Leonard is an individual and a nonresident of Texas. In its May 8, 2014 original petition, Salinas asserted in part (1) the trial court has jurisdiction over Leonard because Leonard "purposefully availed himself of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over [him]"; (2) "the assumption of jurisdiction over [Leonard] will not offend traditional notions of fair play and substantial justice"; (3) Salinas would show "the cause of action arose from or relates to the contacts of [Leonard] to the state of Texas, thereby conferring specific jurisdiction with respect to [Leonard]"[1]; (4) Leonard "engaged in activities constituting business in the state of Texas as provided by Section 17.042 of the Texas Civil Practice and Remedies Code, in that [Leonard] contracted with [Salinas], a Texas resident, and performance of the agreement in whole or in part thereof was to occur in Texas"; and (5) "[v]enue in Dallas County is proper" because "all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county" and "this lawsuit involves a written contract that expressly names said county as the venue for its enforcement."

Further, in a section of the original petition titled "Summary of Claims," Salinas stated as follows:

---

[1] Additionally, Salinas asserted in its pleading that the trial court has general jurisdiction over Leonard. However, during oral submission before this Court, Salinas stated that its claims rely solely on a specific jurisdiction theory. Therefore, we address only specific jurisdiction in this appeal. *See, e.g., Ltd. Logistics Servs., Inc. v. Villegas*, 268 S.W.3d 141, 147 (Tex. App.—Corpus Christi 2008, no pet.) (addressing only specific jurisdiction on appeal where appellee stated during oral argument that it relied solely on that theory and general jurisdiction was not at issue).

11. Mr. Leonard was a key employee whom Salinas Concrete had trained in its processes and to whom it had entrusted confidential information and important client relationships during his long tenure with the Company. In violation of common law and contractual duties, he has profited by abusing that trust.

12. First, while still employed by the Company, Mr. Leonard violated his fiduciary and contractual duties to Salinas Concrete by, upon information and belief, surreptitiously engaging in concrete contracting, construction, and related services to benefit himself. . . . .

13. Second, . . . [w]hen he resigned, Mr. Leonard acknowledged that he had signed a non-compete agreement . . . . Yet he asked that the Company consent to his potentially getting jobs from its smaller customers, independent builders who commission only one or a few foundations from time to time. Mr. Leonard agreed to remit $500 per builder to Salinas Concrete if these customers used his services. He also asked that Salinas Concrete assist him in setting up a supply relationship at favorable volume pricing with the supplier of the cables that are a necessary part of the foundation system he had been trained in constructing while employed by the Company. Salinas Concrete orally consented to the arrangement and assisted as requested, securing Mr. Leonard's ability to acquire the necessary cable. Yet Mr. Leonard has not remitted the promised sums to Salinas Concrete despite completing the work for these independent builders.

14. Finally, despite the common law and contractual obligations Mr. Leonard undertook—and his express reaffirmation that he would not do so—he has accepted work from the Company's largest customer.

Salinas asserted six claims based on those alleged facts: (1) "Breach of Fiduciary Duties: Operation of Competing Business While Employed By Plaintiff,"[2] (2) "Breach of Fiduciary Duty: Post-Employment Use of Plaintiff's Confidential Information,"[3] (3) "Breach of Written Contract: Non-Compete and Non-Solicitation Covenant,"[4] (4) "Breach of Oral Contract,"[5] and

---

[2] In its claim respecting Leonard's breach of fiduciary duties "while employed," Salinas asserted in part that "[a]s Salinas Concrete's employee, Defendant owed fiduciary duties to Salinas Concrete, including the duty of loyalty and utmost good faith to act in the Company's best interests, the duty of candor, the duty to refrain from self-dealing, the duty of full disclosure, and the duty to not use or divulge Salinas Concrete's confidential information and trade secrets to the detriment of Salinas Concrete" and breached those duties by (1) "surreptitiously engaging in a concrete business which was in direct competition with the Company's concrete business while Defendant was still the Company's employee"; (2) "putting his own competing business first, which caused him to neglect his business responsibilities"; and (3) "using the confidential customer contacts he had obtained from Salinas Concrete to solicit competing concrete foundation work from Salinas Concrete's customers, and also by using the Company's methods—trade secrets—to perform the competing foundation work."

[3] As to the claim for breach of fiduciary duty "post-employment," Salinas contended in part that as a "former employee," Leonard owed a fiduciary duty to Salinas "not to use or divulge the Company's confidential information and trade secrets" and breached that duty "by using the confidential customer contacts he had obtained from Salinas Concrete to solicit competing concrete foundation work from Salinas Concrete's customers, and also by using the Company's methods—trade secrets—to perform the competing foundation work."

[4] Specifically, Salinas contended in its breach of written contract claim that Leonard breached "non-compete and non-solicitation covenants" in a "written employment contract" between the parties by "engaging in a competing concrete foundation business and soliciting competing business from the Company's customers" during and after his employment with Salinas and "engaging in work for Salinas Concrete's largest customer after he, in 2013, had reaffirmed his commitment to comply with the non-compete and non-solicitation covenants."

(5) claims "in the alternative" for "Quantum Meruit,"[6] and "Tortious Interference With Existing Business Relationship."[7]

Attached to Salinas's original petition was a copy of a six-page "Standard Employment Agreement" that states it was entered into between Salinas and Leonard (the "Agreement"). The Agreement is signed by Leonard, but not by Salinas. Each page bears the handwritten notation "8-6-09" and Leonard's handwritten initials. Additionally, the Agreement (1) states in paragraph 1 that Leonard agrees to "render exclusive and full-time services" at "Company's offices located at 1300 10th Street Plano TX 75074 and at such other locations as the Company may request"; (2) states in paragraph 2.1 that the term of Leonard's employment "shall begin on the date hereof, and shall end on May __, 2009"; (3) states in paragraph 8.6 that it "shall be governed by and construed according to the laws of the State of Texas applicable to agreements to be wholly performed therein and is enforceable in Dallas County, Texas"; and (4) contains non-compete, non-solicitation, and confidentiality provisions.

On June 30, 2014, Leonard filed a special appearance in which he objected to the trial court's jurisdiction over him. Leonard contended he "does not, and at all times relevant herein, has not, conducted business within the state of Texas" and "has no minimum contacts with the state of Texas sufficient for a Texas court to assert jurisdiction over him." Further, Leonard asserted, in part,

---

[5] According to Salinas, (1) the parties entered into a "binding and enforceable oral contract" under which "Salinas Concrete would help secure favorable pricing with the cable supplier and would allow Defendant to solicit Salinas Concrete's smaller customers in exchange for Defendant's promise to pay $500 for each job Defendant performed for the Company's smaller customers" and (2) Leonard breached that oral contract "when he performed work for Salinas Concrete's smaller customers but failed to pay Salinas Concrete the agreed-upon price per job."

[6] Salinas stated it "seeks to recover in quantum meruit for the valuable services it provided for Defendant; specifically, the services of establishing a supply relationship between Defendant and the cable supplier and in helping Defendant secure favorable volume pricing from the cable supplier."

[7] In its tortious interference claim, Salinas asserted in part that "as a result of the willful conduct of Defendant in diverting Salinas Concrete's customers to his own competing business through misappropriation of the Company's confidential information, both after Defendant's employment with Salinas Concrete and, upon information and belief, during his employment, the Company has incurred lost profits and other benefits of contracting with its customers."

4. Plaintiffs alleged claims arise from an employer/employee relationship. Leonard worked for Salinas, who is authorized to do and is actually doing business in Louisiana. Leonard interviewed in Louisiana, was hired in Louisiana, and performed all work in Louisiana. All paperwork in connection with Leonard's hiring was mailed to him in Louisiana, and signed by Leonard in Louisiana.

5. The purported "Standard Employment Agreement" appended to Plaintiff's Original Petition was sent to Leonard in Louisiana. Leonard did not execute that agreement, or any others, in Texas.

6. Leonard did not receive any training or education in Texas. Leonard did not perform any part of his employment with plaintiff in Texas. All contacts between plaintiff and defendant occurred in Louisiana, not Texas.

7. The alleged negligent actions and acts constituting a breach of the agreement all allegedly occurred in Louisiana, not Texas.

. . . .

11. In the present case, there is no specific or general jurisdiction. The employment of Leonard was in Louisiana, Leonard was interviewed and hired in Louisiana, and all paperwork was executed in Louisiana.

12. . . . Defendant has no places of business in Texas, does not and has never resided in Texas, and defendant has taken no other action which would put him on notice that he is subject to jurisdiction by a Texas Court.

13. Finally, this Court's exercise [of] jurisdiction over defendant would offend traditional notions of fair play and substantial justice and would violate defendant's due process rights.

Attached to Leonard's special appearance was an affidavit made by him.[8]

In its response to Leonard's special appearance, Salinas contended in part (1) "the parties' employment relationship began in 2006, when Leonard initiated contact with [Salinas] by calling its president, Osiel Salinas, 'to talk to him about a job' with the company"; (2) after being hired by Salinas, Leonard "regularly conducted business in the State of Texas, placing

---

[8] Leonard testified in part in his affidavit as follows:

2. Sometime in or prior to May 2006, I spoke to Osiel Salinas, a principal of Plaintiff herein, Salinas Concrete, LP, over the telephone about possible employment. During this conversation, I was located in Louisiana.

3. Osiel Salinas traveled to Louisiana and conducted an interview, in Louisiana, and thereafter extended an offer of employment to me. The employment offer was extended while I was in Louisiana, and I accepted the employment in Louisiana.

4. Thereafter, all employment related activities performed by me were performed wholly within Louisiana. I performed no work in Texas.

5. All employment paperwork was sent to me in Louisiana, and I signed all documents in Louisiana.

6. I continued to work for Salinas until July, 2013. During that time, all work was performed in Louisiana. I personally performed no work activities while in Texas.

7. All compensation was paid to me in Louisiana.

8. During my employment with Salinas, I worked under my Louisiana contractor's license.

9. Since ending my employment with Salinas in July 2013, I have continued to work only in Louisiana.

10. I have never lived in Texas, and I have never been employed in Texas. I do not own any property in Texas, and have never conducted business in Texas.

orders with a Texas supplier and maintaining frequent and regular communications with [Salinas's] office in Texas"; (3) Leonard visited Salinas's Texas office on at least two occasions during his employment, once "for the purpose of meeting his coworkers" and once for a "superintendent meeting"; (4) also, during his employment, Leonard visited Texas to attend Osiel Salinas's birthday party and, on another occasion, attended a college football game in Texas for which Salinas provided him with tickets; (5) after resigning, "Leonard requested and received assistance from [Salinas] in establishing a favorable pricing relationship with a Texas cable supplier," described by Salinas as "Suncoast Post-Tension" ("Suncoast"); and (6) since then, Leonard "has competed for business against [Salinas] for his new employer" by "placing orders with [Suncoast]" and "soliciting business" from "D.R. Horton," described by Salinas as "a Texas-based builder" and Salinas's "largest customer." Also, Salinas argued in part as follows:

> Courts have specific jurisdiction over a nonresident defendant if there is a substantial connection between the defendant's forum contacts and the operative facts of the litigation. Salinas Concrete's claims against Leonard include breaches of fiduciary, common law, and contractual duties related to his employment with Salinas Concrete. As previously discussed, Leonard maintained purposeful, substantial contact with residents of Texas throughout his employment. He signed an employment contract with Salinas Concrete, a Texas resident. The contract contains confidentiality provisions, a non-competition agreement, and a choice-of-law provision designating Texas law as controlling, and it also contemplates full performance in Texas. Further, Salinas Concrete's claims for breach of the oral agreement formed after Leonard had resigned involve operative facts which include Osiel Salinas's assistance in contacting Suncoast (a Houston-based supplier) to secure favorable pricing for Leonard.

Additionally, Salinas asserted Leonard had not met his burden to demonstrate that the exercise of jurisdiction over him would be unjust. Specifically, Salinas argued in part

> [Leonard] offers no evidence that travel to Dallas would be unfairly burdensome on him. Instead, he offers only that he is not a resident of Texas. This fact is not determinative.
> Moreover, the contract Leonard signed placed him on notice that litigation was foreseeable in Texas. It names Salinas Concrete as a Texas business entity, states the employee will render services at the company's offices in Texas, contains a choice-of-law provision designating Texas as the forum state and Dallas as the proper venue, and anticipates that a breach by Leonard would cause

injury to the company. When considered along with the nature and extent of Leonard's contacts with Texas, both during and after his course of dealing with Salinas Concrete, litigation in Texas was reasonably foreseeable to Leonard and is not unjustly burdensome or unfair to Leonard.

Attachments to Salinas's response included, in part, excerpts from an October 9, 2014 deposition of Leonard in this case.[9]

The trial court held a hearing on Leonard's special appearance on December 3, 2014. At that hearing, the parties' counsel stated they had agreed to submit the special appearance "on the pleadings and the evidence that are in the record so far without any additional testimony." Additionally, counsel for Leonard argued in part (1) the Agreement is not "enforceable" because "it was signed after it ended by its own terms" and "material terms are missing," (2) Leonard "clearly did not do business in the state of Texas," and (3) "[t]he cause of action does not arise out of any activities conducted within the state of Texas." Counsel for Salinas argued in part (1) "whether or not the contract is valid is not at issue here" and (2) "[w]hat is at issue is that the causes of action arise directly out of the employment relationship that was formed in 2006 when Mr. Leonard called Osiel Salinas on his own accord looking for a job."

---

[9] Leonard's deposition testimony included the following:

Q. Okay. How did you come to work for Salinas Concrete?

A. A friend of mine, James Leger, just graduated college, and I talked to him about it, and he told me to give Osiel a call.

Q. So you called Osiel looking for a job?

A. Yes, to talk to him about a job.

Q. Okay. And ultimately, he hired you?

A. Uh-huh (AFFIRMATIVE RESPONSE).
. . . .
Q. . . . During that meeting with Osiel in Louisiana, after you had quit, did you participate in a phone call between Osiel and Suncoast?

A. I was standing right next to him when he called.

Q. And Osiel was trying to help you secure favorable pricing?

A. How? No, he wasn't. He just called and said, it's okay, you can sell materials to Adam.

The trial court denied Leonard's special appearance without stating a basis for its ruling. No findings of fact and conclusions of law were requested or filed. This interlocutory appeal timely followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West 2015).

## II. DENIAL OF SPECIAL APPEARANCE

### *A. Standard of Review*

The question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil*, 414 S.W.3d at 150.

### *B. Applicable Law*

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Id*. (citing *Moki Mac*, 221 S.W.3d at 574). The Texas long-arm statute provides in part that "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (West 2015). "The broad 'doing business' language in Texas's long-arm statute allows the trial court's jurisdiction to 'reach as far as the federal constitutional requirements of due process will allow.'" *Kelly*, 301 S.W.3d at 657 (quoting *Moki Mac*, 221 S.W.3d at 575). Personal jurisdiction is consistent with due process when (1) the nonresident defendant has established minimum

contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)). When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors. *Moncrief Oil*, 414 S.W.3d at 151. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction. *Id.* This analysis assesses the quality and nature of the contacts, not the quantity. *Id.* Physical presence in the state is not required but "frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Id.* at 152. "At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there." *Id.*

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id.* at 150. When specific jurisdiction is alleged, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's purposeful activity within the forum. *Id.* at 150, 156 (citing *Moki Mac*, 221 S.W.3d at 573). "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* "[B]ut-for causation alone is insufficient." *Id.* at 157 (citing *Moki Mac*, 221 S.W.3d at 585). "The operative facts are those on which the trial will

focus to prove the liability of the defendant who is challenging jurisdiction." *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.) (citing *Moncrief Oil*, 414 S.W.3d at 156, 157). We analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *Moncrief Oil*, 414 S.W.3d at 150–51.

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Id*. at 154 (citing *Retamco*, 278 S.W.3d at 338). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id*. at 154–55. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Retamco*, 278 S.W.3d at 341.

"Our special appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 658; *see also* TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead allegations sufficient to confer jurisdiction. *Kelly*, 301 S.W.3d at 658. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id*. The defendant can negate jurisdiction on either a factual or legal basis. *Id*. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id*. A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the

evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*. Further, in a special appearance, the defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Shelter Mut. Ins. Co. v. Dallas Cnty. Hosp. Dist*., 366 S.W.3d 858, 864 (Tex. App.—Dallas 2012, pet. denied) (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### C. Application of Law to Facts

As described above, Leonard asserts only one issue on appeal, challenging the trial court's "holding" that he "had sufficient minimum contacts with the State of Texas to warrant the exercise of personal jurisdiction over [him]." However, because the record does not show all of Salinas's claims arise from the same alleged jurisdictional contacts, we analyze specific jurisdiction on a claim-by-claim basis. *See Moncrief Oil*, 414 S.W.3d at 150–51.

### 1. Breach of Written Contract

#### a. Minimum Contacts

We begin with Salinas's claim for "Breach of Written Contract: Non-Compete and Non-Solicitation Covenant." Leonard asserts in his appellate brief (1) "[m]erely contracting with a Texas company does not necessarily constitute 'purposeful availment' for jurisdictional purposes"; (2) "[w]hen a nonresident lives and works outside of Texas, employment 'by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas'"; and (3) a choice of law provision is not sufficient to confer jurisdiction, nor does it mean the parties voluntarily agreed to submit to the jurisdiction of that

–11–

state. Further, Leonard argues that even if the Agreement were enforceable,[10] "any violation of the agreement would involve acts performed by Leonard in Louisiana, not Texas" and therefore "any alleged breach of the alleged employment agreement does not arise from, and is not related to, activity conducted by Leonard within Texas." Specifically, Leonard contends in part

> This alleged agreement was mailed to Leonard in Louisiana, and signed by him in Louisiana. More importantly, Appellee's petition does not allege, nor is there any evidence that Leonard ever solicited any customers in Texas. Accordingly, if Leonard used confidential customer contacts to contact Salinas Concrete's customers, he did so in Louisiana, not Texas. If Leonard competed with Salinas Concrete by performing concrete work, he performed such work in Louisiana, not Texas. While Appellee contends that Leonard violated the alleged agreement by engaging in work for Salinas Concrete's largest customer (D.R. Horton), any such work would have occurred in Louisiana, not Texas. Moreover, Leonard's contacts with D.R. Horton (on behalf of his new employer) took place in Louisiana, with D.R. Horton's Louisiana representatives who are based out of D.R. Horton's Baton Rouge, Louisiana office, and involved work to be performed in Louisiana.

The authorities cited by Leonard in support of his argument include several cases in which this Court concluded the requirements for personal jurisdiction were not met. *See Internet Advert. Grp., Inc. v. Accudata, Inc.*, 301 S.W.3d 383 (Tex. App.—Dallas 2009, no pet.); *Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524 (Tex. App.—Dallas 2007, no pet.); *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479 (Tex. App.—Dallas 2003, no pet.).

Salinas asserts in part (1) "[o]f his own volition, [Leonard] reached out to the president of [Salinas] in Texas to ask for a job"; (2) "Leonard executed an employment contract with [Salinas], a Texas entity" and "mailed the contract to Texas"; (3) the contract "expressly provided that Texas law would control and that venue exists in Dallas County, Texas" and "expressly contemplated performance in Texas"; and (4) "[d]uring his employment, Leonard regularly contacted Texas residents for business purposes." Thus, Salinas argues, (1) Leonard "deliberately affiliated himself with the Texas company, and it was entirely foreseeable that

---

[10] Leonard asserts in his appellate brief that the enforceability of the Agreement is "not directly at issue here." Additionally, during oral submission before this Court, counsel for Leonard stated that this appeal does not require this Court to "get into the merits of whether the Agreement itself would be enforceable."

litigation related to his employment would occur in Texas" and (2) Salinas's breach of written contract claim is "substantially connected" to "purposeful" contacts of Leonard with Texas.

Mere employment by a Texas company is not, alone, sufficient to establish minimum contacts to support personal jurisdiction. *See, e.g., Gustafson*, 118 S.W.3d at 484. Nor does entering into a contract with a Texas company or including a Texas choice-of-law provision in a contract necessarily establish the requisite minimum contacts in Texas. *Id.* However, a contract may establish sufficient minimum contacts when considered against a backdrop of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985). Further, "even in instances where a contract was signed in another state, an out-of-state company with no physical ties to Texas still has minimum contacts with Texas when it is clear the company purposefully directed its activities toward Texas." *Retamco*, 278 S.W.3d at 340; *see also Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("It is reasonable to subject a nonresident defendant to personal jurisdiction in Texas in connection with litigation arising from a contract specifically designed to benefit from the skills of a Texas resident who performs contractual obligations in Texas.").

The record does not show Leonard specifically addressed section 17.042(1) in the trial court, nor does he do so on appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (nonresident does business in Texas if he "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state"). Further, unlike the case before us, none of the cases cited by Leonard involve a nonresident initiating contact with a Texas company to inquire about employment and signing an employment agreement with provisions respecting performance and enforceability in Texas. *See Internet Advert. Grp.*, 301 S.W.3d at 390 (alleged contacts did not demonstrate personal availment where nonresident did

not reach out to Texas company, but rather was contacted by Texas company, and contract "did not require performance in Texas"); *Rushmore*, 231 S.W.3d at 530 (employment contract that did not require performance in Texas, contain a venue provision, or assign any business territory or clients in Texas was not sufficient to establish minimum contacts); *Gustafson*, 118 S.W.3d at 484 (no specific jurisdiction was established for claim alleging breach of confidentiality agreement where confidentiality agreement did not make reference to Texas or require any performance in Texas and none of contacts relied upon were connected to nonresident's execution of written confidentiality agreement or his dissemination of confidential information, both of which occurred outside of Texas). The facts described by Salinas in the trial court respecting its breach of written contract claim demonstrate purposeful contact by Leonard with Texas and an intent to obtain benefits from that contact. *See Retamco*, 278 S.W.3d at 339.

Additionally, because specific jurisdiction is at issue, we must determine whether there is a substantial connection between Leonard's forum contacts described above and the "operative facts" of Salinas's breach of written contract claim. *See Moki Mac*, 221 S.W.3d at 585; *see also Moncrief Oil*, 414 S.W.3d at 150, 156. In doing so, we employ the "framework" established by the supreme court in *Moki Mac*. *See Moncrief Oil*, 414 S.W.3d at 156–57 (citing *Moki Mac*, 221 S.W.3d at 585). In *Moki Mac*, a Texas teenager, Andy, fell to his death in Arizona while on a hike supervised by a Utah-based company, Moki Mac River Expeditions. *Moki Mac*, 221 S.W.3d at 573. His parents, Charles and Betsy Drugg, filed suit against the company in Texas for wrongful death, maintaining the claim arose from misrepresentations in documents the company mailed to them in Texas as well as the company's other Texas contacts. *Id.* at 573, 576. The trial court denied Moki Mac's special appearance and the court of appeals affirmed on the basis of specific jurisdiction, concluding the Druggs' misrepresentation claim arose from, and

related to, Moki Mac's purposeful contacts with Texas. *Id.* at 573. The supreme court disagreed. *Id.* The supreme court stated in part,

> [W]e accept as true the Druggs' claim that Andy might not have gone on the trip were it not for Moki Mac's representations about safety. However, the operative facts of the Druggs' suit concern principally the guides' conduct of the hiking expedition and whether they exercised reasonable care in supervising Andy. The events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question.

*Id.* at 585; *see also Moncrief Oil*, 414 S.W.3d at 156–57 (applying *Moki Mac* "framework" in determining whether "substantial connection" existed between defendant's alleged forum contacts and operative facts of litigation); *Proctor v. Buell*, 293 S.W.3d 924, 932 (Tex. App.—Dallas 2009, no pet.) (same).

As described above, Salinas asserted in its breach of written contract claim that Leonard breached "non-compete and non-solicitation covenants" in the Agreement by "engaging in a competing concrete foundation business and soliciting competing business from the Company's customers" during and after his employment with Salinas and "engaging in work for Salinas Concrete's largest customer after he, in 2013, had reaffirmed his commitment to comply with the non-compete and non-solicitation covenants." Although the record does not show that any of the work allegedly engaged in by Leonard's "competing business" was performed in Texas,[11] we cannot agree with Leonard's position that "any alleged breach of the alleged employment agreement does not arise from, and is not related to, activity conducted by Leonard within Texas." Rather, the "operative facts" of Salinas's breach of written contract claim "concern principally" the terms of the contract. *See Kaye/Bassman Int'l Corp.,* 418 S.W.3d at 357 ("operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction"); *Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 685

---

[11] The parties do not dispute that Leonard's post-employment work for D.R. Horton was performed only at locations in Louisiana.

(Tex. App.—El Paso 1989, writ denied) (terms of contract are "operative facts" in breach of contract case); *see also Moki Mac*, 221 S.W.3d at 585. On this record, we conclude the operative facts of Salinas's claim for breach of written contract are substantially connected to Leonard's forum contacts described above.

b. Fair Play and Substantial Justice

Further, as described above, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 150–51. In the trial court, Leonard's entire argument respecting this requirement was his assertion that the trial court's exercise of jurisdiction over him "would offend traditional notions of fair play and substantial justice and would violate defendant's due process rights." Additionally, on appeal, Leonard contends as follows:

> Appellee has conducted operations in Louisiana for years, availing itself of the rights and privileges afforded by the laws of that state, and Appellee's allegations arise out of activity that occurred (or did not occur) in that state. Further, the majority of potential witnesses, including the D.R. Horton contacts, and other Louisiana builders allegedly solicited by Leonard, are in Louisiana. Most importantly, Leonard is a Louisiana resident, employed in Louisiana, and subjecting him to the time and expense of missing work and traveling to and from Texas for discovery and trial preparation and would be unduly burdensome.

In addition to its assertions in the trial court described above, Salinas argues on appeal (1) "Texas has a significant interest in providing a convenient forum in which its residents may seek redress for wrongs committed by nonresidents, especially where the parties have agreed that Texas law will govern the dispute, as they have here"; (2) any travel burden to Leonard is "marginal"; and (3) "[t]here are likely to be at least as many witnesses who reside in Texas as there are witnesses who reside in Louisiana."

Even assuming without deciding that Leonard's arguments asserted for the first time on appeal are to be considered by this Court, we cannot conclude Leonard has satisfied his burden to present "a compelling case that the presence of some consideration would render jurisdiction

–16–

unreasonable." *Shelter Mut. Ins. Co.*, 366 S.W.3d at 864; *see also Retamco*, 278 S.W.3d at 341 (describing five factors to be considered in evaluating compliance with notions of fair play and substantial justice). "In multi-state disputes, someone will always be inconvenienced, and this argument is frequently rejected as a basis for denying personal jurisdiction." *Tabasso v. BearCom Grp.*, 407 S.W.3d 822, 828 (Tex. App.—Dallas 2013, no pet.); *see also Moncrief Oil*, 414 S.W.3d at 155 ("Distance alone cannot ordinarily defeat jurisdiction."). Further, (1) the Supreme Court has "recognized state interests in protecting . . . contracts," *Moncrief Oil*, 414 S.W.3d at 152, and (2) the Agreement in this case contained a Texas choice of law provision, is "enforceable in Dallas County, Texas," and provides for performance in Texas. On this record, we conclude the exercise of personal jurisdiction over Leonard as to Salinas's claim for breach of written contract does not offend traditional notions of fair play and substantial justice.

### 2. Salinas's Other Claims

Salinas's remaining five claims are as follows: (1) "Breach of Fiduciary Duties: Operation of Competing Business While Employed By Plaintiff," (2) "Breach of Fiduciary Duty: Post-Employment Use of Plaintiff's Confidential Information," (3) "Breach of Oral Contract," (4) "Quantum Meruit," and (5) "Tortious Interference With Existing Business Relationship." According to Leonard, (1) even if it were true that he violated fiduciary duties owed to Salinas by operating a competing business while employed by Salinas, "that conduct would have occurred in Louisiana, not Texas" and "[Salinas] has presented no evidence . . . that [Leonard's] breach of fiduciary duty is related to any activity in Texas"; (2) "[Salinas] has not alleged, and has offered no evidence, that Leonard solicited any customers in Texas or used Salinas's trade secrets to perform concrete work in Texas" and therefore "Leonard's alleged liability for post-employment use of confidential information does not arise from and is not related to activity conducted by Leonard within Texas"; (3) even if Salinas could prove the alleged oral contract

–17–

exists, "it would be a Louisiana contract, negotiated and formed in Louisiana, and any breach would involve actions that occurred (or didn't occur) in Louisiana, not Texas"; and (4) the operative facts of Salinas's quantum meruit and tortious interference claims "occurred (if they occurred at all) in Louisiana, not Texas." Also, Leonard contends in his reply brief in this Court that "any argument that the plaintiff's claims would not have arisen 'but for' Leonard's calling Osiel Salinas in 2007 and his signing of the alleged employment agreement, is foreclosed, and Texas law is clear that these contacts alone are clearly insufficient to support a finding of specific jurisdiction."

Salinas argues in part (1) the operative facts of all of its claims "arise directly out of Leonard's choice to reach out to Salinas Concrete to seek an employment relationship" and "are substantially connected to Leonard's purposeful solicitation of employment from the Texas company"; (2) "[p]ursuant to the parties' course of dealing and the contract he signed, [Leonard's] duties were required to be performed in Texas"; (3) Leonard "had regular substantial contacts with Texas throughout his employment"; (4) "[t]he underlying claim that Leonard wrongfully used confidential information and trade secrets is substantially connected to the fact that he received that information from Salinas Concrete's Texas office pursuant to the contract he signed, and he used it with knowledge that doing so would harm Salinas Concrete in Texas"; and (5) because "[p]art of the consideration for [the alleged oral agreement between the parties] was for Salinas Concrete to contact a Texas company and to arrange a supply agreement involving continuous and systematic economic activities for Leonard," the operative facts of Salinas's claim for breach of oral contract "are substantially connected to Leonard's contacts with Texas."

The record does not show that any of the five claims in question is specifically based on any provision of the Agreement.[12] To the extent Salinas argues that obligations respecting the "employment relationship" between the parties arose from the Agreement, and that contacts pertaining to the Agreement are thus substantially connected to the five claims in question, the Texas Supreme Court has rejected this type of "'but-for' relatedness" as a causative threshold for specific jurisdiction. *Moki Mac*, 221 S.W.3d at 580-85.

Further, even assuming without deciding that Leonard's phone call to Salinas about employment, subsequent employment, and contact with Texas residents for business purposes during his employment established minimum contacts with Texas, our analysis leads us to conclude the relationship between those alleged contacts and the operative facts of the five claims in question is "too attenuated to satisfy specific jurisdiction's due-process concerns." *Id*. at 588; *see Proctor*, 293 S.W.3d at 932. Specifically, the operative facts of Salinas's claims for breach of fiduciary duties and tortious interference with a business relationship "concern principally" Leonard's use of confidential information and trade secrets in his work solely in Louisiana. *See Moki Mac*, 221 S.W.3d at 585; *see also Moncrief Oil*, 414 S.W.3d at 156–57; *Proctor*, 293 S.W.3d at 932. In addition, there is no evidence in this record that any confidential information or trade secrets were divulged or transmitted to Leonard in Texas. This is the opposite of *Moncrief Oil* where the delivery of alleged trade secrets on a disk to defendant Gazprom at a meeting in Houston was the jurisdictional connection to Texas that was substantially related to the focus at trial of the proof of Gazprom's liability for misappropriation of trade secrets. *See Moncrief Oil*, 414 S.W.3d at 153–54. As to Salinas's claims for breach of oral contract and quantum meruit, Salinas asserts Osiel Salinas's phone call from Louisiana to

---

[12] During oral argument before this Court, counsel for Salinas stated that the claim for breach of a written contract is "separate" from the other claims, including the claim for breach of fiduciary duty during employment.

Suncoast's Houston office after Leonard's employment ended was made at Leonard's request and resulted in favorable pricing for Leonard with Suncoast. However, the operative facts of those claims "concern principally" Leonard's alleged failure to pay Salinas a fixed fee for certain jobs performed by Leonard in Louisiana and/or compensate Salinas for the "valuable service" it provided by helping Leonard secure favorable pricing for supplies used to perform jobs in Louisiana. *See Moki Mac*, 221 S.W.3d at 585; *see also Moncrief Oil*, 414 S.W.3d at 156–57; *Proctor*, 293 S.W.3d at 932.

In support of its argument that the operative facts of the five claims in question are "substantially connected" to contacts of Leonard with Texas, Salinas cites three cases that it contends involved contacts "directly analogous" to the alleged contacts of Leonard. *See Tabasso*, 407 S.W.3d at 822; *Murray v. Epic Energy Res, Inc.*, 300 S.W.3d 461 (Tex. App.—Beaumont 2009, no pet.); *Billingsley Parts & Equip., Inc. v. Vose*, 881 S.W.2d 165 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, those cases are distinguishable.

*Billingsley* involved a lawsuit filed by a Texas corporation, Billingsley Parts and Equipment ("Billingsley"), against a former sales representative, Jean Vose. *See* 881 S.W.2d at 167. Vose placed a phone call from Illinois to Billingsley's Texas office to inquire about a certain product sold by Billingsley. *Id.* Subsequently, Billingsley sent a sales manager from Texas to Illinois to meet with Vose and show her their product. *Id.* At that meeting, the sales manager and Vose discussed the possibility of Vose becoming an Illinois sales representative for Billingsley. *Id.* Shortly thereafter, Billingsley mailed an employment contract to Vose in Illinois. *Id.* Vose signed it and mailed it back to Texas, where it was signed by Billingsley's president. *Id.* The employment contract (1) contained a Texas choice-of-law provision, (2) stated that all obligations of the parties "are performable" in Texas, and (3) prohibited Vose from soliciting any of Billingsley's customers for two years after leaving Billingsley. *Id.*

During her tenure with Billingsley, Vose placed orders by mail and by telephone calls to Billingsley's Texas office and was paid commissions by checks drawn on a Texas bank. *Id.* She did not go to Texas or make any sales in Texas. *Id.* Less than a year after signing the employment contract, Vose resigned and started her own business. *Id.* at 168. Billingsley sued Vose in Texas. *Id.*

The trial court sustained Vose's objection to personal jurisdiction and dismissed the lawsuit. *Id.* On appeal, Billingsley argued (1) "Vose purposely sought to profit from a transaction consummated in Texas"; (2) "by virtue of the contract, [Vose] had a substantial economic relationship with Texas"; and (3) "Vose had fair warning that she might be subject to suit in Texas because she initiated the contact with the Texas company." *Id.* The court of appeals reversed. *Id.* The court of appeals stated in part "Vose's only contacts with Texas were those related to the contract under litigation" and "[i]f Texas has jurisdiction over Vose, it is under the concept of specific jurisdiction, because this cause of action arises from Vose's contract of employment with Billingsley." *Id.* at 169. The court of appeals concluded Vose's contacts were sufficient to give Texas courts specific jurisdiction over her because (1) Vose made the initial contact with the Texas company; (2) Vose signed and mailed a written contract to Texas to be executed in Texas; (3) the contract provided that it was to be governed by Texas law and was performable in Texas; and (4) Vose sent orders to Texas and received and cashed checks drawn on a Texas bank. *Id.* at 169–70.

We note that *Billingsley* was decided more than a decade prior to the Texas Supreme Court's conclusion in *Moki Mac* that "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *See Moki Mac*, 221 S.W.3d at 585. Moreover, the appellate court in *Billingsley* did not specifically describe the claims asserted. *See Billingsley*,

881 S.W.2d at 169. Thus, it is not clear that *Billingsley* involved any claims other than breach of the written contract signed by Vose. Further, several of the contacts described by the court of appeals in *Billingsley* as supporting jurisdiction pertained specifically to the written contract. By contrast, Salinas's claim for breach of a written contract is not one of the claims in question in this part of our analysis. We cannot agree with Salinas that *Billingsley* is instructive as to Salinas's claims in question.

In *Murray*, a Texas employer, Epic Energy Resources, Inc. ("Epic"), sued a nonresident former employee, Patrick Murray, asserting claims for breach of non-disclosure and non-competition provisions in a written employment contract, misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with existing and prospective contracts. *See* 300 S.W.3d at 465–66. The written employment contract between Epic and Murray contained a choice of law provision that stated, "[t]he parties acknowledge and agree that the law of Texas will govern the validity, interpretation, and effect of this Agreement and dispute[s] relating to, or arising out of, the employment relationship between [Epic] and [Murray]." *Id*. at 465. Additionally, the contract contained a provision requiring that certain claims and controversies arising out of or relating to the agreement "shall be settled by final and binding arbitration in Montgomery County, Texas." *Id*.

Following his termination, but prior to Epic filing suit, Murray demanded arbitration in Texas pursuant to the arbitration provision in the employment contract. *Id*. After the lawsuit was filed, Murray filed a special appearance. *Id*. at 466. Epic contended the trial court had specific jurisdiction over Murray because Murray (1) negotiated the terms of his employment with Epic's representatives in Texas; (2) entered into an employment agreement with a Texas resident; (3) agreed that Texas law governs the agreement; (4) traveled to Texas several times during his seven months of employment with Epic; (5) regularly reported to and worked under

the direction of Epic employees in Epic's Texas office; and (6) demanded arbitration in Texas. *Id.*

The trial court denied Murray's special appearance and abated the pending arbitration proceedings between Murray and Epic. *Id.* at 468. Murray filed an interlocutory appeal, as well as a petition for writ of mandamus respecting the arbitration proceeding. *Id.* The court of appeals concluded Murray's pre-suit demand for arbitration did not constitute an appearance in the suit later filed by Epic, but Murray's numerous contacts with Texas required affirmance of the denial of Murray's special appearance. *Id.* at 470.

The opinion in *Murray* illustrates contacts with Texas that are unlike those in the case before us. *See id.* The court of appeals in *Murray* listed several contacts with Texas, including Murray's (1) entering into an employment agreement with a company located in Texas; (2) agreeing to terms that provided that Texas law would govern "disputes arising from the agreement" and that certain disputes pertaining to the agreement would be settled by arbitration in Montgomery County, Texas; and (3) traveling to Texas on several occasions during his employment to meet with clients or attend management meetings. *Id.*

In its analysis, the court of appeals (1) stated that the choice of law provision governing "disputes arising from the agreement" was a "significant factor," (2) considered the requirement for arbitration significant in that it was mentioned twice (once as to the fact that the arbitration provision would be governed by Texas law and again as to arbitration being required to take place in Montgomery County, Texas), and (3) noted that one of the purposes of Murray's several trips to Texas was "to meet with clients." *Id.* Of course, in the case before us, there is no arbitration provision, the choice of law provision does not address "disputes arising from the agreement," and there is nothing in the record showing visits by Leonard to Texas "to meet with clients." *Murray* is instructive, but distinguishable.

Finally, *Tabasso* involved a lawsuit filed by a Texas employer, BearCom Group, Inc. ("BearCom"), against a former employee, Michael Tabasso, a Pennsylvania resident. *See* 407 S.W.3d at 825. During his employment by BearCom, Tabasso was based out of Pennsylvania and was in charge of a sales region that did not include Texas. *Id*. As part of his employment, Tabasso sent and received shipments from Texas and visited Texas on several occasions for training and other meetings. *Id*. At some point during his employment, despite having been disciplined by BearCom for attempting to make sales outside his designated sales territory, Tabasso contracted to provide rental equipment to Texas customers of BearCom. *Id*. BearCom terminated Tabasso and filed suit against him in Texas. *Id*. at 826.

The claims pleaded by BearCom against Tabasso included breach of fiduciary duty, misappropriation of trade secrets and confidential information, violations of the Texas Theft Liability Act, conversion, tortious interference with contracts and business relations, and unfair competition. *Id*. at 827. Specifically, BearCom pleaded in part that Tabasso (1) was involved in all aspects of BearCom's business; (2) had extensive contact with BearCom's customers and virtually unlimited access to BearCom's confidential information; (3) frequently requested and received phone and radio equipment from BearCom in Texas; (4) wrongfully appropriated and converted some of that equipment along with BearCom's confidential information; (5) communicated with, contracted with, and sent product to a vendor service center in Texas; and (6) provided rental shipments to customers in Texas. *Id*. Additionally, BearCom produced evidence that included (1) email correspondence between Tabasso and Texas customers contracting for services and (2) contracts between Tabasso and Texas customers. *Id*. at 828.

Tabasso filed a special appearance, which was denied by the trial court. *Id*. at 826. The only evidence offered with that special appearance was an affidavit by Tabasso, which the trial court found "not credible in light of the record." *Id*. On appeal, this Court affirmed. *Id*. This

Court stated in part (1) "[b]ecause the crux of the underlying litigation involves Tabasso's contacts with BearCom and BearCom's customers based in Texas, we conclude BearCom pleaded sufficient facts to bring Tabasso within the Texas long-arm statute for [the claims brought by BearCom]" and (2) it then became Tabasso's obligation to negate jurisdiction, which he did not do. *Id*. at 827–28.

Unlike the case before us, *Tabasso* involved claims based on the defendant improperly providing services in Texas to customers located in Texas. We cannot agree with Salinas that *Tabasso* is instructive as to the case before us.

On this record, we conclude the Texas contacts of Leonard alleged by Salinas are not sufficiently related to the operative facts of Salinas's five claims in question to sustain the exercise of specific jurisdiction over Leonard as to those claims. *See Moki Mac*, 221 S.W.3d at 588. Therefore, we decide in favor of Leonard as to the portion of his issue challenging personal jurisdiction respecting Salinas's claims for (1) "Breach of Fiduciary Duties: Operation of Competing Business While Employed By Plaintiff," (2) "Breach of Fiduciary Duty: Post-Employment Use of Plaintiff's Confidential Information," (3) "Breach of Oral Contract," (4) "Quantum Meruit," and (5) "Tortious Interference With Existing Business Relationship."

### III. CONCLUSION

We conclude the trial court properly denied Leonard's special appearance as to Salinas's claim for breach of a written contract, but erred by denying the special appearance as to Salinas's remaining claims. We decide Leonard's issue partly in his favor and partly against him.[13]

We (1) affirm the trial court's order as to Salinas's claim for breach of a written contract; (2) reverse the trial court's order as to Salinas's remaining claims and render judgment granting

---

[13] In the "prayer" sections of their appellate briefs, both parties request that this Court grant them "reasonable attorney's fees" incurred in this appeal. Neither party provides argument, authority, or further briefing on appeal respecting those requests. We conclude the parties' requests for appellate attorney's fees incurred in this interlocutory appeal present nothing for this Court's consideration. *See* TEX. R. APP. P. 38.1(i).

–25–

Leonard's plea to the jurisdiction as to those claims and dismissing them for want of jurisdiction; and (3) remand this case to the trial court for further proceedings consistent with this opinion.

141584F.P05

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADAM C. LEONARD, Appellant

No. 05-14-01584-CV      V.

SALINAS CONCRETE, LP, Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-04971.
Opinion delivered by Justice Lang, Justices Bridges and Evans participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED** in part and **REVERSED** in part. We (1) **AFFIRM** the trial court's order as to appellee Salinas Concrete, LP's claim for breach of a written contract; (2) **REVERSE** the trial court's order as to appellee Salinas Concrete, LP's remaining claims and **RENDER** judgment granting appellant Adam C. Leonard's plea to the jurisdiction as to those remaining claims and **DISMISSING** those claims for want of jurisdiction; and (3) **REMAND** this case to the trial court for further proceedings consistent with this Court's opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of July, 2015.