**Modify and affirm as modified; Opinion Filed November 12, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00331-CV

### CREATION TECHNOLOGIES TEXAS, LLC, Appellant
### V.
### AEG POWER SOLUTIONS B.V., Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-015065**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

This is an accelerated interlocutory appeal from an order granting the special appearance filed by AEG Power Solutions B.V. ("AEG B.V."). In four issues, Creation Technologies Texas, LLC ("Creation") asserts the trial court erred by granting AEG B.V.'s special appearance because AEG B.V. is subject to general and specific jurisdiction in Texas. We modify the trial court's order and affirm as modified.

### BACKGROUND AND PROCEDURAL HISTORY

In September of 2012, Creation, a Texas company, entered into a Manufacturing Agreement with a Texas-based company, AEG Power Solutions USA, Inc., subsequently known as 3W Power Solutions USA, Inc. ("AEG USA"). In line with the Manufacturing Agreement, AEG USA placed purchase orders with Creation in June of 2013 for the manufacture of solar

inverters, which convert the output of a solar panel into a utility frequency. These purchase orders were placed, at least in part, to fulfill an order from another company, Power Max Co., Ltd., which was in the business of, among other things, developing and selling solar electric power plants in Japan to investors. Power Max, however, failed to pay AEG USA, and by January of 2014 AEG USA owed Creation over $2 million under the terms of the Manufacturing Agreement. In February of 2014, AEG USA entered into a Security Agreement with Creation to avoid termination of the Manufacturing Agreement. The Security Agreement, executed in the Netherlands on AEG USA's behalf by Jeffrey Casper, a non-Texas resident, gave Creation a continuing security interest in AEG USA's accounts, equipment, and inventory.

AEG USA, meanwhile, sued Power Max in a Texas court in June of 2015 for breach of contract, and the case was removed to federal court in October of 2015. AEG USA subsequently settled the case, and the proceeds of the settlement were paid to Creation, which had intervened in the case.[1]

On October 3, 2018, Creation filed the underlying lawsuit against AEG B.V.; AEG USA; AEG Power Solutions GmbH ("AEG Germany"); AEG Power Solutions Sdn Bhd, AEG Power Solutions' Malaysian subsidiary ("AEG Malaysia"); 3W Power S.A., AEG Power Solutions' Luxembourg-based holding company ("AEG Luxembourg"); and Jeffrey Casper who, at the time of the events that form the basis for this suit, was a director of AEG USA and AEG Power Solutions'[2] chief restructuring officer and chief financial officer (collectively, "the AEG Defendants"). This lawsuit seeks millions of dollars allegedly owed to Creation for the

---

[1] We take judicial notice of the United States District Court for the Eastern District of Texas, Sherman Division's November 7, 2016 corrected memorandum opinion and order granting in part plaintiff's motion for summary judgment and denying defendant's motion for partial summary judgment; the court's order of March 21, 2017; the parties' joint status report of March 31, 2017; and the court's agreed order of dismissal of June 16, 2017. *See, e.g., 3W Power USA, Inc. f/k/a AEG Power Solutions USA, Inc. v. PowerMax Co., Ltd.*, Case No. 4:15-CV-677, 2016 WL 6581996 (E. D. Tex. Nov. 7, 2016).

[2] Casper's declaration attached to AEG B.V.'s special appearance states: "AEG Power Solutions is comprised of AEG Power Solutions B.V. and its approximately 23 subsidiaries, which include AEG Power Solutions GmbH and 3W Power USA, Inc." AEG Power Solutions is not a party to the lawsuit.

manufacture of commercial solar inverters under theories of alter ego, breach of the written Security Agreement, fraud, fraudulent transfer, and negligent misrepresentation. Creation filed an amended petition on November 5, 2018.[3] AEG B.V. and AEG Germany filed special appearances that argued Creation had not alleged sufficient contacts with Texas to warrant the exercise of personal jurisdiction.

According to Casper's declaration, AEG Power Solutions is comprised of AEG B.V. and its twenty-three subsidiaries, which include AEG Germany and AEG USA. AEG B.V. is a Dutch company headquartered in Zwanenburg, Netherlands. AEG B.V. is the operational holding company, which primarily provides administrative services to the various AEG subsidiaries; "[a]lthough this entity does some sales and service sales [sic] activities, it does most of the central supporting and administrative activities. The executive management, *i.e.*, CEO and CFO, is centralized within [AEG B.V.]." AEG B.V. provides some oversight to AEG USA and AEG Germany, but those entities are self-governed. Casper's declaration states that at all relevant times, "AEG BV has not 'controlled' AEG Germany or USA as suggested in Creation's Petition." AEG B.V. does not have any bank accounts, property, offices, employees, or agents in Texas. The vast majority of AEG Power Solutions' production and manufacturing is carried out by AEG Germany.

Casper stated the decision to enter into the Manufacturing Agreement in 2012 was made by AEG USA, which, at that time, was "run at the USA level with some oversight from the parent company, AEG BV. The decision to enter into the Manufacturing Agreement was not subject to oversight from AEG BV or any other AEG entity." Casper's declaration states that while in operation, AEG USA maintained its own board of directors; filed tax returns in the United States; employed individuals in the State of Texas, paid them for their services, and provided them with benefits including health care; and maintained separate and distinct bank accounts from any other

---

[3] AEG Malaysia and Jeffrey Casper were not named as parties in the amended petition; Creation subsequently non-suited AEG Luxembourg.

defendants. To the extent there were any intra-company transfers of funds, those transfers were documented, and AEG USA was required to repay the transferor. When common positions were used to provide services to different subsidiaries, such as the general counsel position, AEG USA would pay a share of the person's salary.

Casper averred that AEG B.V. has not contracted by mail or otherwise with a Texas resident or Texas business; has not agreed to perform a contract in whole or in part in the State of Texas; has not recruited directly or through an intermediary a Texas resident for employment; does not own real property or have any other assets in Texas; does not maintain an office or other point of contact in Texas; has not purposefully availed itself of the privilege of conducting activities within the State of Texas, and any contact it might have had with Texas does not give rise to specific or general jurisdiction; has not placed any product in the stream of commerce knowing that some of them would reach Texas and did not otherwise engage in conduct indicating an intent to serve the Texas market; has not solicited business in Texas or with any other person or entity in Texas; has not entered into any agreement with Creation; does not maintain a registered agent in the State of Texas; and has not committed a tort or statutory violation in the State of Texas. He further averred that AEG B.V. never sold any inverters. Additionally, no inverters were sold by AEG Power Solutions in the State of Texas.

In its response to AEG B.V.'s special appearance, Creation argued that AEG B.V. was subject to general and specific jurisdiction in Texas because there was no distinction between AEG B.V. and its American subsidiary, AEG USA; Creation asserted AEG B.V. was "fused" to AEG USA. Following a hearing, the trial court granted AEG B.V.'s special appearance. Creation appealed.

## PERSONAL JURISDICTION

Texas courts may exercise personal jurisdiction over a nonresident defendant "when the

state's long-arm statute authorizes such jurisdiction and its exercise comports with due process." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016). The Texas long-arm statute provides in relevant part that "[i]n addition to other acts that may constitute doing business," a nonresident does business in Texas if the nonresident contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state, or if the nonresident commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1), (2). The statute "provides for personal jurisdiction that extends to the limits of the United States Constitution, and so federal due process requirements shape the contours of Texas courts' jurisdictional reach." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

"[W]hether a trial court's exercise of jurisdiction is consistent with due process requirements turns on two requirements: (1) the defendant must have established minimum contacts with the forum state; and (2) the assertion of jurisdiction cannot offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[S]ufficient minimum contacts exist when the nonresident defendant 'purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* at 66–67 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The nub of the purposeful availment analysis is whether a nonresident defendant's conduct in and connection with Texas are such that it could reasonably anticipate being haled into court here." *Id.* at 67. The defendant must purposefully direct contacts into the forum state. *Id.* (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)).

When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: (1) only the defendant's contacts with

the forum are relevant, not the unilateral activity of another party or third person; (2) the contacts relied upon must be purposeful rather than random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Cornerstone,* 493 S.W.3d at 70–71. This analysis assesses the quality and nature of the contacts, not the quantity. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013). A defendant will not be haled into a jurisdiction based solely on contacts that are random, isolated, or fortuitous, or on the unilateral activity of another party or a third person. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *Guardian Royal Exch.*, 815 S.W.2d at 226.

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l,* 414 S.W.3d at 154 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). The evaluation is undertaken in light of these factors, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies.

*Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant. *Searcy*, 496 S.W.3d at 66. Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction that exist in the plaintiff's pleadings. *Id.* The defendant can negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial

court with evidence establishing personal jurisdiction." *Id.* (footnotes omitted). A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.* A defendant's contacts with a forum may give rise to either general or specific jurisdiction. *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 392 (Tex. App.—Dallas 2012, no pet.).

General jurisdiction is "dispute blind," meaning that it is "an exercise of the court's jurisdiction made without regard to the nature of the claim presented." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007); *see also Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) ("A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."). "But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). With respect to foreign corporations, general jurisdiction requires "affiliations with the State [that] are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Cornerstone Healthcare*, 493 S.W.3d at 71.

Specific jurisdiction exists when the plaintiff's claims "arise out of" or are "related to" the defendant's contacts with the forum. *Searcy*, 496 S.W.3d at 67 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 9 (1984)). "[T]he *defendant's* relationship, not the *plaintiff's* relationship, with the forum state is the proper focus of the specific jurisdiction

analysis; that is, courts must consider the relationship between the defendant, the forum state, and the litigation." *Id.* "'[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.'" *Moncrief Oil Int'l,* 414 S.W.3d at 156 (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)). "[B]ut-for causation alone is insufficient." *Id.* at 157; *see also Leonard v. Salinas Concrete*, LP, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.). "'The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction.'" *Leonard*, 470 S.W.3d at 188 (quoting *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.)). "[S]pecific jurisdiction requires us to analyze the jurisdictional contacts on a claim-by-claim basis." *Moncrief Oil Int'l,* 414 S.W.3d at 150.

### STANDARD OF REVIEW

The question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l,* 414 S.W.3d at 150 (citing *Moki Mac River Expeditions*, 221 S.W.3d at 574). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Id.* (citing *Retamco Operating, Inc*., 278 S.W.3d at 337).

### DISCUSSION

Creation alleged AEG B.V. is a Dutch company that is headquartered in the Netherlands, and that it owns twenty-two subsidiaries, offices, and "competence centers" around the world, including in Dallas. The subsidiaries include AEG USA, AEG Germany, and AEG Malaysia which, it alleged, "either at AEG [B.V.]'s direction or the direction of AEG [B.V.]'s parent and holding company, 3W Power SA . . . , funds the operations of, controls, and operates its subsidiaries as a single business entity."

–8–

## A. General Jurisdiction

In its first issue, Creation asserts AEG B.V. is subject to general jurisdiction in Texas because its contacts have been continuous and systematic such that AEG B.V. is "essentially at home" in Texas. Creation cites several press releases issued by AEG Power Solutions to support its argument:

- AEG Power Solutions announced in January of 2010 that it was expanding its corporate operations in North America and "hiring for positions in its regional offices in Dallas, Texas and Markham, Ontario."

- AEG Power Solutions stated that it maintains a "regional office" in Dallas, Texas, which was established in 2001 and specializes in sales, engineering, and service for North America.

- AEG Power Solutions announced in March of 2010 that it was designing and installing the largest commercial rooftop solar system in Plano, Texas.

- AEG Power Solutions announced in June of 2014 that it worked on a project in Saudi Arabia with KBR, Inc. whose office is located in Houston, Texas.

- AEG Power Solutions announced a new office in Houston, Texas, and the appointment of a Sales Manager – Oil Gas & Petrochemical for the United States in 2015. The press release listed a Houston address for AEG Power Solutions.

- AEG Power Solutions launched a UL-compliant battery charger, which it planned to display at a tradeshow in Houston, Texas.

Although Creation asserts these press releases show that AEG B.V. conducted various business activities in Texas, the press releases were issued by and discuss activities of AEG Power Solutions. None of these press releases announce any activity by AEG B.V., and Creation provided no evidence that AEG Power Solutions is the same entity as AEG B.V. Instead, Casper

–9–

stated in his declaration that AEG B.V. is a subsidiary of AEG Power Solutions. None of the evidence that Creation relies on shows AEG B.V. took any action in Texas, including the actions discussed in the press releases. The press releases only show activity by AEG Power Solutions, a different entity. Creation presented no evidence showing AEG B.V. had any contacts with Texas.

However, AEG B.V. presented evidence that it has not contracted by mail or otherwise with a Texas resident or Texas business; has not agreed to perform a contract in whole or in part in the State of Texas; has not recruited directly or through an intermediary a Texas resident for employment; does not own real property or have any other assets in Texas; does not maintain an office or other point of contact in Texas; has not purposefully availed itself of the privilege of conducting activities within the State of Texas, and any contact it might have had with Texas does not give rise to specific or general jurisdiction; has not placed any product in the stream of commerce knowing that some of them would reach Texas and did not otherwise engage in conduct indicating an intent to serve the Texas market; has not solicited business in Texas or with any other person or entity in Texas;  has not entered into any agreement with Creation; does not maintain a registered agent in the State of Texas; and has not committed a tort or statutory violation in the State of Texas.

Although AEG B.V. presented evidence it had no contacts with Texas, Creation presented no evidence showing AEG B.V. had any contacts with Texas. We conclude Creation failed to show AEG B.V. had contacts that are so continuous and systematic as to render it essentially at home in Texas. Thus, the district court lacked general jurisdiction over AEG B.V. based on its own contacts with the forum. We overrule Creation's first issue.

In its second issue, Creation argues AEG B.V. is AEG USA's alter ego and is "fused" to AEG USA for jurisdictional purposes, which makes AEG B.V. subject to general jurisdiction in Texas. When a plaintiff asserts jurisdiction on an alter ego theory, "[t]he plaintiff must prove that

–10–

the nonresident is actually the alter ego of the resident corporation." *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.) (citing, inter alia, *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002)). To "fuse" AEG B.V. to AEG USA for jurisdictional purposes, Creation must prove that AEG B.V. controls the internal business operations and affairs of AEG USA. *See BMC Software*, 838 S.W.3d 799. "But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* The Texas Supreme Court has considered the following factors to determine whether a subsidiary is separate and distinct from its parent corporation for personal jurisdiction purposes: (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters; (3) the observance of corporate formalities; and (4) the degree of the parent's control over the general policy and administration of the subsidiary. *PHC–Minden*, 235 S.W.3d at 175. "Appropriate parental involvement includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies." *Id.* at 176; *see also N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-16-00319-CV, 2017 WL 3275896, at *6 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.). To fuse companies such as AEG B.V. and AEG USA for jurisdictional purposes, the plaintiff must show a "plus factor," which is "something beyond the subsidiary's mere presence within the bosom of the corporate family." *PHC-Minden*, 235 S.W.3d at 176 (internal quotation marks omitted).

As to the first factor identified by the supreme court, AEG B.V. concedes it owns substantially all of AEG USA's stock. However, the two entities maintain separate headquarters: AEG B.V.'s headquarters is in the Netherlands and AEG USA's headquarters is in Plano, Texas. To satisfy the third and fourth factors set forth by the Texas Supreme Court—the observance of

corporate formalities and the degree of the parent's control over the general policy and administration of the subsidiary—Creation relies on the same press releases discussed above that were issued by AEG Power Solutions. Creation asserts these press releases show AEG B.V. held AEG USA out as a "regional office in Dallas," rather than as a subsidiary. As discussed above, the press releases were issued and discuss activities by AEG Power Solutions. They were not issued by or discuss activities of AEG B.V. These press releases do not provide any information about AEG B.V., including whether AEG B.V. observed corporate formalities or exercised control beyond that normally associated with common ownership and directorship.

Creation also asserts AEG B.V. employees negotiated the Power Max deal and received a purchase order via email from Power Max and, when Power Max wanted to change the terms of the agreement, AEG USA had to seek approval from AEG B.V. To support these assertions, Creation cites to a purchase order issued by Power Max to AEG Power Solutions, an email from Cynthia Diallo whose signature block shows she is the Financial Controller for AEG Power Solutions, and the LinkedIn profiles for Casper and Emmanuel Drevon who identifies himself as the Corporate Treasurer of AEG Power Solutions. These documents, like the press releases, relate only to AEG Power Solutions, not AEG B.V. Additionally, these documents do not show AEG Power Solutions or AEG B.V. controlled the internal business operations and affairs of AEG USA and certainly not to an extent that is greater than that normally associated with common ownership and directorship. *See PHC-Minden*, 235 S.W.3d at 172–73.

We conclude Creation made no showing that AEG B.V. is the alter ego of or "fused" to AEG USA. Therefore, the trial court did not err by concluding it lacked general jurisdiction over AEG B.V. on the basis that it was the alter ego of and fused to AEG USA. We overrule Creation's second issue.

## B. Specific Jurisdiction

In its third issue, Creation asserts AEG B.V. is subject to specific jurisdiction in Texas because it committed tortious acts outside the state which were purposefully or expressly aimed at Texas. Creation argues that AEG B.V., "through its manifest control of AEG USA, directed its intentional misrepresentation and fraudulent conduct at Creation, which was intended to have an effect in Texas to AEG and AEG USA's benefit (and Creation's detriment)." More specifically, Creation asserts that Casper knew when he signed the Security Agreement that many material terms and warrants were untrue and that AEG B.V. was closing AEG USA and transferring its operations to AEG Germany.

The Security Agreement is between AEG USA and Creation. Casper executed the document as a director of AEG USA. The Agreement does not discuss AEG B.V., and Casper did not sign the document as a representative of AEG B.V. There is no evidence that AEG B.V. was involved with the Security Agreement in any way. Thus, the Security Agreement is not evidence AEG B.V. had contacts with Texas or that Creation's claims "arise out of" or are "related to" AEG B.V.'s contacts with the forum. We overrule Creation's third issue.

## C. Dismissal with Prejudice

In its fourth issue, Creation argues in the alternative that the trial court erred by dismissing its claims against AEG B.V. with prejudice. We agree. The trial court's order states: "Defendant AEG Power Solutions BV's Special appearance is SUSTAINED, and Plaintiff's claims against AEG Power Solutions BV are hereby DISMISSED with prejudice for lack of personal jurisdiction."

A dismissal with prejudice functions as a judgment on the merits. *Celanese Corp. v. Sahagun*, No. 05-16-00868-CV, 2017 WL 3405186, at *12 (Tex. App.—Dallas Aug. 9, 2017, pet. denied) (mem. op.) (citing *Att'y Gen. of Tex v. Sailer*, 871 S.W.2d 257, 258 (Tex. App.—Houston

[14th Dist.] 1994, writ denied)). However, a trial court's ruling on a special appearance should not render a judgment on the merits. *Id.* (citing *Geo Chevron Ortiz Ranch # 2 v. Woodworth*, No. 04–06–00412–CV, 2007 WL 671340, at *4 (Tex. App.—San Antonio Mar. 7, 2007, pet. denied) (mem. op.)). Thus, the trial court erred by dismissing Creation's claims against AEG B.V. with prejudice.

When this error occurs, the proper remedy is to reform the order so that it reflects that the trial court merely sustained the special appearance and dismissed the claims for lack of personal jurisdiction. *Id.* (citing *Fretz v. Reynolds*, No. 04–0300854–CV, 2004 WL 2803201, at *2 (Tex. App.—San Antonio Dec. 8, 2004, pet. denied)). Accordingly, we sustain Creations' fourth issue and modify the applicable portion of the trial court's order to read that "Defendant AEG Power Solution BV's special appearance is SUSTAINED and Plaintiff's claims against AEG Power Solutions BV are hereby dismissed for want of personal jurisdiction as to that party."

## D. CONCLUSION

We modify the trial court's order to show Creation's claims against AEG B.V. were dismissed for want of personal jurisdiction rather than dismissed with prejudice. As modified, we affirm the trial court's order.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

190331F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CREATION TECHNOLOGIES TEXAS, LLC, Appellant

No. 05-19-00331-CV     V.

AEG POWER SOLUTIONS B.V., Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-18-015065.
Opinion delivered by Justice Nowell. Justices Myers and Osborne participating.

In accordance with this Court's opinion of this date, the trial court's Order on AEG Power Solution B.V.'s Special Appearance is **MODIFIED** as follows:

We **DELETE** the following language from the order: "Plaintiff's claims against AEG Power Solutions BV are hereby DISMISSED with prejudice for lack of personal jurisdiction" and

We **ADD** the following language to the order: "Plaintiff's claims against AEG Power Solutions BV are hereby dismissed for want of personal jurisdiction as to that party."

It is **ORDERED** that, as modified, the order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AEG Power Solutions B.V. recover its costs of this appeal from appellant Creation Technologies Texas, LLC.

Judgment entered this 12th day of November 2019.