**Opinion filed February 3, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00054-CV

_____

## RYAN BROUSSARD, Appellant

## V.

## IPSCO TUBULARS, INC. D/B/A TMK IPSCO, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-19-08-1063-CV**

### O P I N I O N

This is an appeal from the denial of a special appearance in a suit brought by Appellee, IPSCO Tubulars, Inc. d/b/a TMK IPSCO (IPSCO), against two former employees.[1] In its amended petition, IPSCO has alleged claims for misappropriation of trade secrets, breach of loyalty, breach of contract, and damages; it has also

---

[1]IPSCO's pleadings name Doug Dunford and Ryan Broussard, former employees of IPSCO and current employees of OFS International, LLC (OFSi), as defendants in the underlying suit. This appeal solely concerns the trial court's ruling on Broussard's special appearance.

requested temporary and permanent injunctive relief. Appellant, Ryan Broussard—a Colorado resident and former employee of IPSCO in Texas—specially appeared to contest a Texas state district court's exercise of personal jurisdiction over him. In two issues on appeal, Broussard challenges the trial court's denial of his special appearance. We affirm.

## I. *Factual Background*

IPSCO is a Texas-based company that designs and produces connections for steel tubular goods used in the oil and gas industry. The underlying litigation concerns its design of threaded connections that are used to connect pieces of tubular steel in oil and gas wells.

Broussard began working for IPSCO in 2012, immediately following his graduation from Texas A&M University, as a design engineer. Broussard was involved in numerous projects in the capacity of lead engineer, and he "was one of six employees who had total access to IPSCO's . . . server, which housed its most confidential information." By January of 2016, Broussard had transitioned from a product-development role into a sales role. In 2017, Broussard moved from Texas to Denver, Colorado, where he continued working for IPSCO and with IPSCO's Texas-based customers.

In April of 2019, Broussard resigned from his employment with IPSCO. Broussard thereafter sought employment with OFS International, LLC (OFSi), a Texas-based, former sister company of IPSCO.[2] Following his interview with OFSi in Texas, Broussard began working for OFSi in a product-design role even though he continued to reside in Colorado. Broussard has since designed a threaded

---

[2]IPSCO has sued OFSi in the United States District Court for the Southern District of Texas and asserted claims for misappropriation of trade secrets and breach of contract against its former sister company.

connection for OFSi that is being manufactured in Texas and marketed and sold to Texas-based customers.

Because of his actions and involvement with OFSi, IPSCO subsequently sued Broussard and asserted claims for misappropriation of trade secrets, breach of loyalty, and breach of contract. In its operative pleading, IPSCO has alleged, *inter alia*, that it "discovered that OFSi is using Broussard . . . to design and market products under OFSi's own name that are based on IPSCO trade secrets, which . . . Broussard had access to by virtue of [his] employment and Confidentiality Agreement [with IPSCO]." Broussard later filed an amended special appearance, which the trial court denied following a hearing.

On appeal, Broussard asserts that the trial court erred when it denied his special appearance. Specifically, he contends that the trial court erred when it found it had specific jurisdiction over him because (1) the jurisdictional facts alleged by IPSCO are not substantially related to the operative facts of the underlying litigation; and (2) Broussard's actions and conduct in Colorado do not constitute a purposeful availment of the privilege and benefits of doing business in Texas.

## II. *Standard of Review*

We review a trial court's ruling on a special appearance de novo. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (explaining that "[w]hether a court can exercise personal jurisdiction over a nonresident defendant is a question of law"); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). When the trial court does not issue findings of fact and conclusions of law in support of its ruling, as in the case before us, we infer "all facts necessary to support the judgment and [that are] supported by the evidence." *Kelly*, 301 S.W.3d at 657; *Moki Mac*, 221 S.W.3d at 574 (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

## III. *Analysis*

"Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac*, 221 S.W.3d at 574 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990)); *see Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013).

Under Texas's long-arm statute, trial courts may exercise personal jurisdiction over a nonresident defendant who engages in acts "that may constitute doing business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015). In effect, the broad "doing business" language in Texas's long-arm statute allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Kelly*, 301 S.W.3d at 657 (quoting *Moki Mac,* 221 S.W.3d at 575); *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Therefore, "if an assertion of jurisdiction accords with federal due-process limitations," the Texas long-arm statute authorizes the exercise of such jurisdiction. *Moki Mac*, 221 S.W.3d at 575.

Pursuant to the federal due-process requirements, personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts give rise to personal jurisdiction when the nonresident defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State," thereby "invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

We note that "[a] nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction"—general jurisdiction or specific jurisdiction. *Id.* ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts." (citing *BMC Software*, 83 S.W.3d at 796)). In the specific-jurisdiction context, "purposeful availment alone will not support" the exercise of personal jurisdiction. *Id.* at 579. Rather, the question of a nonresident defendant's purposeful availment "has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." *Id.* Thus, there are "two co-equal components" of the specific-jurisdiction analysis: if the nonresident defendant has (1) purposefully availed himself of the privilege and benefits of doing business within the forum state and (2) his alleged liability arises out of or is related to an activity conducted within the forum state, specific jurisdiction is established. *See id.* at 576, 579 (adopting the "substantial connection" test for analyzing the second component of specific jurisdiction in Texas).

Furthermore, the plaintiff bears the initial burden of pleading sufficient allegations to invoke a trial court's jurisdiction over a nonresident defendant under the Texas long-arm statute. *Id.* at 574; *Kelly*, 301 S.W.3d at 658. If the plaintiff satisfies its burden, the burden then shifts to the nonresident defendant to negate every bases of jurisdiction alleged by the plaintiff. *Id.*; *see BMC Software*, 83 S.W.3d at 793.

A. *Purposeful Availment*

Because Broussard's second issue on appeal concerns the purposeful-availment component of our specific-jurisdiction analysis, we will first consider his arguments with respect to that issue. In this regard, Broussard contends that, because

he resides and works in Colorado, he has not purposefully availed himself of the privilege and benefits of doing business in Texas. We disagree.

We consider three factors when determining whether a nonresident defendant has purposefully availed himself of the privilege and benefits of conducting activities in Texas. *Moncrief*, 414 S.W.3d at 151; *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex. 2005)). First, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 785)). Second, "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985). Third, "the defendant must seek some benefit, advantage, or profit by availing itself of the [forum's] jurisdiction." *Id.* (quoting *Michiana*, 168 S.W.3d at 785) (internal quotation marks omitted).

Here, Broussard's contacts with Texas were neither unilateral activities by IPSCO nor random or fortuitous. Broussard accepted employment and executed a Confidentiality Agreement with IPSCO in Texas. That agreement included a choice-of-law provision, which designated Texas law as controlling. From 2012 to 2017, Broussard resided and worked in Texas as an employee of IPSCO. Further, Broussard continued working for IPSCO after he moved to Colorado in 2017. While residing in Colorado, Broussard (1) personally requested, and received, continuous and unfettered access to IPSCO's trade secrets databases that were retained on servers located in Texas; (2) between July 2018 and April 2019, traveled to Texas for business purposes on at least thirteen separate occasions; (3) telephonically attended and participated in IPSCO's weekly product development meetings and, on occasion, traveled to Texas to attend those meetings in person; and (4) traveled to Texas to visit rig locations and supervise IPSCO employees.

Additionally, it cannot be ignored that Broussard has benefitted from his contacts with Texas. In April 2019, after resigning from his position with IPSCO, Broussard sought, and later obtained, employment with one of IPSCO's Texas-based competitors, OFSi. Indeed, Broussard traveled from Colorado to Texas to interview with OFSi for the sole purpose of securing a position as design engineer with that company. *See Moncrief*, 414 S.W.3d at 154 (finding purposeful availment where the defendant attended two meetings in Texas with a Texas corporation and accepted alleged trade secrets created in Texas regarding a potential joint venture in Texas with that corporation). Broussard completed his employee onboarding and training with OFSi in Texas. Moreover, since the inception of his employment with OFSi, Broussard has routinely (1) traveled to Texas to conduct business on behalf of OFSi and (2) engaged in frequent communications with his OFSi coworkers and customers, who are located in Texas.

Ultimately, Broussard has routinely and purposefully reached into the state of Texas to conduct business, acquire alleged trade secrets, solicit employment, and attend business-related meetings. Because such activities undoubtedly aim to benefit Broussard, we hold that Broussard purposefully availed himself of the privilege and benefits of doing business in Texas and the protections of its laws. *See BMC Software*, 83 S.W.3d at 795. Accordingly, we overrule Broussard's second issue on appeal.

B. *Substantial Connection*

Because Broussard purposefully availed himself of the privilege and benefits of doing business in Texas, we now turn to the second component of the specific jurisdiction analysis and Broussard's first issue on appeal. In this regard, Broussard contends that IPSCO failed to allege jurisdictional facts that bear a substantial connection to the operative facts of the underlying litigation. Specifically, Broussard

7

argues that "IPSCO has not identified any trade secrets used or disclosed in Texas, any breach of contract that occurred in Texas, or any breach of the duty of loyalty that occurred in Texas."

With respect to the relatedness component of specific jurisdiction, our minimum-contacts analysis focuses on "the relationship among the defendant, the forum, and the litigation." *Moki Mac*, 221 S.W.3d at 575–76 (quoting *Guardian Royal*, 815 S.W.2d at 228). "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Id.* at 579. In assessing the strength of this nexus, we must determine whether "a substantial connection [exists] between the nonresident defendant and Texas arising from" conduct that constitutes purposeful availment. *Id.* at 584. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* at 585 (citing *Guardian Royal*, 815 S.W.2d at 229–33); *accord Moncrief*, 414 S.W.3d at 156. "If the plaintiff fails to plead facts bringing the defendant within the reach of the long-arm statute, the defendant need only prove that [he] does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658–59. As such, to analyze the relatedness component, we will address the specific claims that IPSCO has asserted against Broussard: (1) misappropriation of trade secrets, (2) breach of contract, and (3) breach of the duty of loyalty.

### 1. *Misappropriation of Trade Secrets*

IPSCO's misappropriation-of-trade-secrets claim principally concerns the alleged conduct and actions by Broussard that constitute a "disclosure or use" of trade secrets belonging to IPSCO. *See* CIV. PRAC. & REM. § 134A.002(3)(B)(ii) (West 2019). Broussard asserts that IPSCO failed to draw a connection between the

forum contacts it has alleged against him and its misappropriation-of-trade-secrets claim. Broussard further argues that IPSCO neither (1) alleged that he used or disclosed any of its trade secrets or confidential information in Texas nor (2) identified any trade secret that he actually acquired in Texas. We disagree.

In its first amended petition, IPSCO pleaded that Broussard "received unfettered access" to its trade secrets information, which is located on its servers in Texas. Although IPSCO's reference to its "server location," in isolation, may be insufficient to justify the exercise of personal jurisdiction over a nonresident defendant, this particular allegation could be relevant to the specific-jurisdiction analysis if it is harmonized and considered with other sufficiently pleaded jurisdictional contacts. *See Info Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 402 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that the location of servers is a unilateral choice by the owner and, without more, does not constitute a purposeful availment for purposes of satisfying the first component of the specific-jurisdiction analysis). Conversely, Broussard argues that any alleged "disclosure or use" of IPSCO trade secrets would have occurred in Colorado. However, the record before us shows that IPSCO pleaded and asserted, as noted below, that Broussard's alleged disclosure of its trade secrets occurred in Texas:

> [Broussard] traveled to Texas for the job interview [with OFSi] where he discussed with the competing company plans for him to be the company's design engineer, designing threaded connections—the same type of work he was doing as an engineer with IPSCO.

At the hearing on Broussard's special appearance, IPSCO's counsel reiterated the above and similar allegations:

> [Broussard] traveled to Texas to interview with OFS[i], where he and OFS[i] discussed plans for Broussard to design threaded connections as the company's design engineer . . . [Broussard] has designed a knock-

off threaded connection for OFS[i] that is being manufactured in Texas and marketed and sold to Texas-based customers.

IPSCO's counsel also emphasized IPSCO's allegation that Broussard "frequently communicates with Texas-based coworkers and customers about the threaded connections he is designing for OFS[i]."

Based on the record before us, we conclude that IPSCO alleged in its operative pleading, among other things, that Broussard: (1) acquired trade secrets in Texas from IPSCO regarding its threaded connections; (2) disclosed IPSCO trade secrets in Texas during his interview with OFSi; and (3) continues to routinely travel to Texas for business purposes as part of his employment with OFSi. Therefore, we hold that IPSCO pleaded sufficient facts that connect Broussard's Texas contacts to the operative facts of its asserted claim for misappropriation of trade secrets— namely, Broussard's unauthorized disclosure in Texas of IPSCO trade secrets. *See Kelly*, 301 S.W.3d at 658–59 (noting that, for a tort claim, a plaintiff's pleaded allegation that the defendant committed the tortious act in Texas is a jurisdictional fact that brings the defendant "within the reach of the long-arm statute"). Accordingly, the trial court did not err when it denied Broussard's special appearance with respect to IPSCO's misappropriation-of-trade-secrets claim.

### 2. *Breach of Contract and Breach of Duty of Loyalty*

Broussard next asserts that IPSCO failed to draw a connection between the forum contacts it has alleged against him and its breach of contract claim; namely, Broussard's alleged breach of confidentiality. Specifically, Broussard argues that (1) IPSCO has not pleaded or alleged any breach committed by him that occurred in Texas and (2) the Texas choice-of-law provision in the parties Confidentiality Agreement does not support specific jurisdiction. Broussard further asserts that IPSCO failed to draw a connection between the forum contacts it has alleged against

him and its breach-of-the-duty-of-loyalty claim. Here, because the jurisdictional allegations that form the bases of these claims are related, we will consider them together.

As we have previously discussed, Broussard executed a Confidentiality Agreement with IPSCO in Texas. IPSCO alleged that "Broussard breached his Confidentiality Agreement by obtaining employment with a direct competitor of IPSCO within the 12-month period following the separation of his employment from IPSCO." That agreement included a choice-of-law provision, which designated Texas law as controlling on disputed issues. *See Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 190 (Tex. App.—Dallas 2015, no pet.) (noting that a Texas choice-of-law provision in a contract, alone, does not necessarily establish the requisite minimum contacts with Texas). However, and irrespective of the enforceability or applicability of this choice-of-law provision, IPSCO further pleaded and alleged that Broussard (1) traveled to Texas to resign from his position with IPSCO; (2) hired Texas counsel to navigate his transition from IPSCO to OFSi; and (3) in order to interview with OFSi, traveled to Texas, where he and OFSi personnel discussed plans for him to design threaded connections as OFSi's design engineer. Moreover, IPSCO alleged that "OFSi and Broussard agree that Broussard was primarily, if not solely, responsible for the design of an OFSi product which OFSi contends was started in March 2019, when Broussard was still employed with IPSCO."

The contacts that IPSCO has alleged existed between Broussard and Texas—namely, executing a Confidentiality Agreement with IPSCO in Texas and then later returning to Texas to interview with OFSi for the purpose of securing a design engineer position while either still employed by IPSCO or within twelve months of Broussard's cessation of employment with IPSCO, in violation of this agreement—simultaneously allege facts that, if proven, would constitute breaches of Broussard's

11

duties of confidentiality and loyalty. As such, we are assured that IPSCO has sufficiently pleaded the requisite minimum contacts between Broussard and Texas: contacts that are substantially connected to the operative facts of both its asserted breach of contract/confidentiality and breach of loyalty claims.

Because we hold that IPSCO has pleaded sufficient jurisdictional allegations—which Broussard, in turn, has failed to negate—in support of the trial court's exercise of specific jurisdiction over Broussard for IPSCO's asserted misappropriation-of-trade-secrets, breach of contract, and breach-of-loyalty claims, we overrule Broussard's first issue on appeal.

## IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

February 3, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.